The Honorable James L. Robart

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

PARS EQUALITY CENTER;
ONEAMERICA; PAMELA
WHITEHALL RAGHEBI; AFSHIN
RAGHEBI; ZEINAB MOHAMED
HASSAN; SIRAJI ETHA SIRAJI;
MALAYEEN AHMED; REZA AZIMI;
YAHYA GHALEB; MITRA
HANNANI; NICHOLAS HANOUT;
HOSSEIN ZAMANI HOSSEINABADI;
HODA MEHRABI
MOHAMMADABADI; JOHN DOES
#1-3; and JANE DOE #1,

17

Plaintiffs,

18

v.

19

20

21

22

23

MIKE POMPEO; KIRSTJEN NIELSEN;
KEVIN K. MCALEENAN; U.S.
DEPARTMENT OF HOMELAND
SECURITY; U.S. DEPARTMENT OF
STATE; and U.S. CUSTOMS AND
BORDER PROTECTION,

Defendants.

24

CASE NO. 2:18-cv-01122-JLR

**DEFENDANTS' MOTION TO DISMISS**

NOTE ON MOTION CALENDAR:
October 26, 2018

25

26

DEFENDANTS' MOTION TO DISMISS

1

Case No. 2:18-cv-01122-JLR

## INTRODUCTION

Presidential Proclamation 9645, Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other Public-Safety Threats, 82 Fed. Reg. 45161 (Sept. 24, 2017) ("Proclamation"), suspends entry into the United States of certain foreign nationals, while also permitting discretionary waivers of the Proclamation's entry restrictions. In *Trump v. Hawaii*, the Supreme Court upheld the Proclamation, rejecting the argument that the Proclamation was invalid because its waiver process was artificial. 138 S. Ct. 2392, 2422-23 & n.7 (2018). Nonetheless, in this putative class action, Plaintiffs bring a collateral attack against the Proclamation by challenging the waiver process. In their Complaint, Plaintiffs assert that visa applicants have been denied waivers without first receiving notice of the availability of a waiver or first being granted consular interviews or other opportunities to provide evidence of waiver eligibility. They also assert that a higher standard of proof for waiver eligibility has been imposed on visa applicants than required by the Proclamation, and that consular officers have lacked discretion in making waiver determinations. In short, Plaintiffs claim that individuals subject to the Proclamation have been denied a "consistent" or "meaningful" process by which they might establish their eligibility for a waiver.

Plaintiffs' Complaint should be dismissed because they fail to state any claim on which relief can be granted. An executive order, such as the Proclamation, does not create individually enforceable rights, and Plaintiffs do not point to any statutory provision or regulation that would supply them with a valid cause of action. Far from creating a private cause of action, the Proclamation expressly precludes judicial review over adjudications of visa applications, which in any event are not justiciable under the doctrine of consular nonreviewability. The consular

DEFENDANTS' MOTION TO DISMISS

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL DCS
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 532-4094

nonreviewability doctrine, moreover, is a necessary corollary of the principle that the political

Branches have plenary power to make rules for the admission of aliens and to exclude those who

do not qualify under those rules, which render the procedures instituted pursuant to the

Proclamation largely immune from judicial review. As to Plaintiffs' due process claim, the

Supreme Court has held that the Proclamation, including its waiver provisions, was a lawful

exercise of the President's discretion, and Plaintiffs do not have a liberty or property interest in the

grant of a discretionary waiver. Moreover, even if such an interest existed, Defendants have

afforded all the process that is due. Lastly, any challenges to the waiver process, guidance, and

adjudications are meritless as they are confuted by the Proclamation's express terms, public

information, the Supreme Court's holding in *Hawaii*, and the actual grants of waivers. For these

reasons, Defendants respectfully ask the Court to dismiss Plaintiffs' Complaint in its entirety.

## LEGAL BACKGROUND

### I.    The Visa Process

Foreign nationals seeking visas to apply for admission to the United States at a port of entry

must complete a process prescribed by the Immigration and Nationality Act ("INA"), which places

on the visa applicant the burden of establishing eligibility to receive a visa. 8 U.S.C. § 1361. When

a visa application is properly executed before a consular officer, the consular officer must either

issue or refuse the visa under 8 U.S.C. § 1182(a) or § 1201(g) or other applicable law. 22 C.F.R.

§§ 41.121 (nonimmigrant visas), 42.81(a) (immigrant visas). Section 1201(g) instructs that no visa

can issue if (1) the applicant is ineligible under § 1182, (2) the visa application does not comply

with applicable statutes or regulations, or (3) the consular officer "has reason to believe" that the

alien applicant is ineligible for a visa "under . . . any other provision of law." Thus, when a consular

DEFENDANTS' MOTION TO DISMISS

3

Case No. 2:18-cv-01122-JLR

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL DCS
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 532-4094

officer needs more information to adjudicate an application—such as information regarding whether the applicant poses a national security risk—the consular officer must deny the visa application until such information is received.[1] *See* 8 U.S.C. § 1201(g). The decision to grant or deny a visa application, with limited exception, rests solely with the consular officer. *See* 8 U.S.C. § 1201(a)(1); 22 C.F.R. §§ 41.111, 41.121, 42.71, 42.81; *see also* 6 U.S.C. § 236(b)-(c) (authorizing the Secretary of Homeland Security and Secretary of State to direct the refusal of visas in certain circumstances).

The Department of State has promulgated internal guidance for consular officers. Not all of this information is public, given the need to protect national security and the integrity of the visa adjudication process—for instance, so that foreign nationals cannot structure their applications so as to avoid revealing potentially derogatory information. *See Almaklani v. Nielsen*, No. 1:18-cv-00398-NGG-CLP (E.D.N.Y. Sept. 26, 2018), Order Granting Government's Motion to Seal (Dkt. 41) (attached as Ex. A) at 6.

## II.   The Presidential Proclamation and Waiver Adjudications

The Proclamation exercises the President's authority under 8 U.S.C. § 1182(f) to suspend entry into the United States of nationals of certain countries, subject to exceptions and discretionary case-by-case waivers. The legality of the Proclamation has already been before the Supreme Court, which held in *Hawaii* that the President, after a worldwide, multi-agency review,

---

[1]     In addition, nationals of a country designated as a state sponsor of international terrorism (currently, Iran, North Korea, Sudan, and Syria) may not be issued a nonimmigrant visa "unless the Secretary of State determines, in consultation with the [Secretary of Homeland Security] and the heads of other appropriate United States agencies, that such alien does not pose a threat to the safety or national security of the United States." 8 U.S.C. § 1735(a).

DEFENDANTS' MOTION TO DISMISS

4

Case No. 2:18-cv-01122-JLR

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL DCS
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 532-4094

permissibly exercised his broad discretion under the INA in issuing the Proclamation. 138 S. Ct. at 2408.

At issue here is the Proclamation's limited waiver provision, which provides, in relevant part, that consular officers may, in their discretion, grant waivers on a case-by-case basis to visa applicants. Proclamation, § 3(c). Visa applicants bear the burden of demonstrating to a consular officer that a waiver would be appropriate by establishing that (1) denying entry would cause the foreign national undue hardship, (2) entry would not pose a threat to the national security or public safety of the United States, and (3) entry would be in the national interest. *Id.* § 3(c)(i).[2] In addition, the Proclamation directs the Secretaries of State and Homeland Security to adopt guidance for consular officers' determinations to issue waivers. *Id.* Nothing in the Proclamation requires that the guidance be made public. *Id.*

On December 4, 2017, the Supreme Court stayed injunctions that had blocked application of the Proclamation in substantial part. *See Hawaii v. Trump*, 138 S. Ct. 542 (Mem.) (Dec. 4, 2017). The State Department thereafter fully implemented the Proclamation, and consular officers subsequently denied visa applications under the Proclamation and began considering applicants for waivers of the Proclamation. Over time, the State Department has provided updated public information on the waiver adjudication process. *See generally* U.S. Department of State - Bureau of Consular Affairs, June 26 Supreme Court Decision on Presidential Proclamation 9645 (last

---

[2]     Section 3(c)(iv)(A) lists examples of when a discretionary waiver might be appropriate, such as when the foreign national seeks to reside with a close family member, obtain urgent medical care, or pursue significant business obligations.

DEFENDANTS' MOTION TO DISMISS

5

Case No. 2:18-cv-01122-JLR

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL DCS
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 532-4094

1  visited Oct. 2, 2018) ("State Dep't Website").[3] As of September 30, 2018, 1,836 visa applicants

2  who are ineligible for visas pursuant to the Proclamation have been granted waivers of its

3  restrictions. *Id.*

4      When adjudicating the visa application of an alien subject to the Proclamation, a consular

5  officer must first determine whether the applicant is eligible for a visa under the INA. *See id.* If

6  the applicant is found to be eligible for a visa in all other respects, the consular officer must then

7  determine whether the applicant qualifies for an exception to the Proclamation. *See id.* If the

8  applicant does not qualify for an exception, the consular officer considers whether the applicant is

9  eligible for a waiver. *See id.*

10

11     All applicants denied visas based on the Proclamation are automatically considered for a

12  waiver under section 3(c) of the Proclamation. *See id.* As explained in the State Department's

13  public guidance, applicants are not required to complete any separate form; instead, consular

14  officers use the applicant's visa application and information gathered during the visa application

15  interview in considering waiver eligibility. *Id.* Additionally, during the visa interview, applicants

16  should disclose "any information that might demonstrate that he or she is eligible for a waiver."

17  *Id.*

18

19     The Proclamation provides several examples of circumstances that might give rise to undue

20  hardship—the first criterion for waiver eligibility—such as cases where a foreign national seeks

21  to enter the United States for urgent medical care. Proclamation, § 3(c)(iv); *see also* State Dep't

22

23  _____

24  [3]   *Available    at*    https://travel.state.gov/content/travel/en/us-visas/visa-information-
    resources/presidential-proclamation-
25  archive/june_26_supreme_court_decision_on_presidential_proclamation9645.html.

26  DEFENDANTS' MOTION TO DISMISS

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL DCS
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 532-4094

Website. If the consular officer determines at the time of the visa application interview that a waiver is not appropriate because either or both of the undue hardship and national interest criteria have not been met, the consular officer will refuse a visa at that time and inform the applicant that his visa application will not be further considered for a waiver. If, however, the consular officer determines that the applicant satisfies the first two criteria and a waiver might be appropriate, the officer will deny the visa application under the Proclamation and inform the applicant that his request for a waiver is undergoing further processing. The consular officer will then consult with the Visa Office to check whether the applicant poses a threat to national security or public safety. State Dep't Website. Because the countries subject to the Proclamation generally have inadequate information-sharing and document-control protocols, individualized assessments of their nationals may be time-consuming and resource-intensive. *See id.* If no threat is identified, a consular officer may, in his discretion, with the concurrence of a consular manager, issue a visa on the basis of a waiver. *Id.*

## FACTUAL BACKGROUND

Plaintiffs include petitioners in the United States with approved family-based immigrant visa petitions who seek to be reunited with family member beneficiaries who are nationals of Iran, Libya, Somalia, Syria, or Yemen, are subject to the Proclamation, and are currently awaiting decisions on waivers or have been denied waivers (the "U.S. Petitioner Subclass"). Complaint (Dkt. 1) ¶ 269. Plaintiffs also include nationals of the aforementioned countries who applied for and were denied family-based, diversity, fiancée, tourist, and investor visas under the Proclamation or are awaiting decisions on their applications for such visas (the "Visa Applicant Subclass"). *Id.* ¶¶ 27-42, 269. Those plaintiffs seek to enter the United States for a wide variety of reasons and

DEFENDANTS' MOTION TO DISMISS

7

Case No. 2:18-cv-01122-JLR

1    describe hardships they have encountered and anticipate in the future if their entry is further

2    delayed. *See id. ¶¶* 163-254. Plaintiffs have brought this suit as a putative class action, but the only

3    common feature is Plaintiffs' allegation that they were either denied waivers or have waiver

4    applications currently pending.[4]

5                                    **STANDARD OF REVIEW**

6         A court should dismiss a case under Rule 12(b)(6) if the complaint fails to state a claim on

7    which relief may be granted. Dismissal is required if the facts pleaded fail to describe a claim that

8    is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court takes well-

9    pleaded allegations as true, this "is inapplicable to legal conclusions." *Id.* Thus, "[t]hreadbare

10   recitals of the elements of a cause of action, supported by mere conclusory statements, do not

11   suffice." *Id.* And where a plaintiff fails to allege a valid cause of action, the case should be

12   dismissed under Rule 12(b)(6). *See Ctr. for Biological Diversity v. U.S. Forest Serv.*, 640 F. App'x

13   617, 620 (9th Cir. 2016).

14

15        In addition to the factual allegations of the complaint, a court may consider "documents

16   attached to the complaint, documents incorporated by reference in the complaint, or matters of

17   judicial notice . . . ." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A court may also

18

19   —————————————————

20   [4]       Paradoxically, despite requesting appointment as and agreeing to take on the duties of class
21   representatives, several Plaintiffs applied for and received authorization to withhold their true
     identifies from the public and the very unnamed putative class members they seek to represent.
22   ECF Nos. 20, 51. In addition, those same Plaintiffs have withheld their identities from Defendants,
     thus prejudicing Defendants in their defense of this case. In light of Federal Rule of Civil Procedure
23   10(a)'s requirement that parties identify themselves in their pleadings, the heavy burden that a
     party must satisfy before he may conceal his identity from the public and especially from an
24   opposing party, and the prejudice that will inure to Defendants if they are unable to investigate,
     among other things, the Doe Plaintiffs' qualifications to serve as class representatives, Defendants
25   intend to file a motion to reconsider.

26   DEFENDANTS' MOTION TO DISMISS                                   U.S. DEPARTMENT OF JUSTICE
                                                                             CIVIL DIVISION, OIL DCS
                                                                  P.O. BOX 868, BEN FRANKLIN STATION
8                                                                        WASHINGTON, DC 20044
     Case No. 2:18-cv-01122-JLR                                        TELEPHONE: (202) 532-4094

1  take judicial notice of "some public records, including the records and reports of administrative

2  bodies." *Id.* at 909 (internal quotation marks omitted).

3  ## ARGUMENT

4  **I.  Plaintiffs' challenge to the implementation of the waiver provision of the**
5  **Proclamation is not justiciable.**

6  Plaintiffs challenge the implementation of the waiver provision of the Proclamation,

7  claiming that the internal and public guidance documents issued by the State Department are not

8  in accordance with the law in violation of the Administrative Procedure Act ("APA"), 5 U.S.C.

9  § 706(2)(C). *See* Complaint (Dkt. 1) ¶ 285. That challenge, however, is precluded by the APA and

10  the doctrine of consular nonreviewability, and also precluded where there are no meaningful

11  standards to apply to executive actions implementing an executive order such as the Proclamation.

12  **A.  Plaintiffs' claims are precluded by the doctrine of consular nonreviewability.**

13  In their Complaint, although Plaintiffs purport to limit their challenge to Defendants'

14  procedural implementation of Section 3(c) of the Proclamation, Plaintiffs also inherently challenge

15  the individual decisions of consular officers denying visas and finding applicants ineligible for

16  waivers of ineligibility. *E.g.*, Complaint (Dkt. 1) ¶¶ 5 (claiming "mass denials of waivers"); 13

17  (referring to plaintiffs who "have been denied waivers and visas"); 101-03 (asserting that

18  potentially thousands of waiver denials were issued "via standardized form letters"); 113, 129

19  (claiming that "denials of waivers and visas" contravene certain regulations and have "caused

20  widespread consternation and confusion"); 222 (describing waiver denials as "perfunctory").

21  Courts have recognized that visa adjudications are immune from judicial review under the

22  longstanding doctrine of consular nonreviewability, which applies regardless of the manner in

DEFENDANTS' MOTION TO DISMISS

9

Case No. 2:18-cv-01122-JLR

which the executive branch denies entry to an alien abroad. *See*, *e.g.*, *Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) ("[I]t is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien."); *Doan v. INS*, 160 F.3d 508, 509 (8th Cir. 1998) ("Administrative decisions excluding aliens are not subject to judicial review unless there is a clear grant of authority by statute."); *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1158-63 & n.2 (D.C. Cir. 1999) (affirming district court's decision that it could not entertain plaintiff's suit challenging the denial and revocation of two separate visas given "the political nature of visa determinations" and "lack of any statute expressly authorizing judicial review of consular officers' actions").

Plaintiffs' claims challenging individual waiver denials must also be dismissed pursuant to consular nonreviewability because the decision to deny a waiver is part of the decision to deny a visa application. Proclamation, § 3(c); *Hawaii*, 138 S. Ct. at 2412, 2414, 2422-23 (noting that section 1182(f), upon which the Proclamation was based, vests authority in the President to impose additional limitations on entry beyond the grounds set forth in the INA and that the waiver process is part of that eligibility determination); *see also Van Ravenswaay v. Napolitano*, 61 F. Supp. 2d 1, 2 (D.D.C. 2009) (plaintiff challenged denial of non-immigrant B-1 visa after his request for a waiver of the visa denial was denied). Notably, in *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972), one of the seminal cases on consular nonreviewability, the Supreme Court specifically applied the principles of the doctrine to bar review of the Attorney General's refusal to waive the visa applicant's inadmissibility.

The doctrine of consular nonreviewability, long recognized by the Supreme Court, preceded passage of the APA and "represents one of" those areas "in which legislative action [and]

DEFENDANTS' MOTION TO DISMISS

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL DCS
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 532-4094

traditional practice indicate that courts are unqualified or that issues are inappropriate for judicial determination." *Saavedra Bruno*, 197 F.3d at 1160 (citation omitted; brackets in original); *see also Allen v. Milas*, 896 F.3d 1094, 1107 (9th Cir. 2018) (rejecting a claim brought under the APA that a consular decision was arbitrary and cparicious); *see also Mandel*, 408 U.S. at 762, 766; *Shaughnessy*, 338 U.S. at 543-44. According to the Ninth Circuit, the doctrine of consular nonreviewability "predates [even] the founding of our Republic" and "stems from" the principle that "the legislative power of Congress over the admission of aliens is virtually complete." *Capistrano v. Dep't of State*, 267 F. App'x 593, 594 (9th Cir. 2008) (quoting *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 970 (9th Cir. 1986)). That pronouncement "aligns [the Ninth Circuit] with courts nationwide," *id.*: the Second Circuit, for instance, has held that "[i]t is settled that the judiciary will not interfere with the *visa-issuing process*," *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978) (emphasis added), while the District of Columbia Circuit has unequivocally held that "[w]hen it comes to matters touching on national security or foreign affairs—and visa determinations are such matters—the presumption of review 'runs aground,'" *Saavedra Bruno*, 197 F.3d at 1162 (quoting *Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988)). And in *Mandel*, the Supreme Court affirmed that "[t]he power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by [its] previous adjudications." 408 U.S. at 766 (quoting *Lem Moon Sing v. United States*, 158 U.S. 538, 547 (1895)); *see also Haitian Refugee Ctr., Inc. v. Baker*, 953 F.2d 1498, 1507 (11th Cir. 1992) ("The foregoing cases [involving requests to review visa determinations by consular officers] evidence Congress's intent

DEFENDANTS' MOTION TO DISMISS

11

Case No. 2:18-cv-01122-JLR

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL DCS
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 532-4094

1
2
3

to preclude judicial review of administrative determinations concerning aliens who have never presented themselves at the borders of the country. Review under the APA would be inconsistent with that intent.").

4
5
6
7
8
9
10
11
12
13

The Ninth Circuit recently held that consular decisions are not subject to APA review and that a court may review such decisions only as constitutional challenges "under the limited *Mandel* standard." *Allen*, 896 F.3d at 1097, 1106-09 ("[T]he only standard by which we can review the merits of a consular officer's denial of a visa is for constitutional error, where the visa application is denied without a "facially legitimate and bona fide reason."). The consular nonreviewability doctrine extends even to U.S. citizen plaintiffs, who are equally precluded from asserting such APA claims. *Saavedra Bruno*, 197 F.3d at 1164 (Neither "aliens seeking review of adverse consular decisions" nor "United States citizens sponsoring their admission" are entitled to judicial review.); *Li Hing*, 800 F.2d at 970

14
15
16
17
18
19
20
21
22
23

Further, given the expansive principles underpinning consular nonreviewability, the doctrine sweeps so broadly as to apply "even where it is alleged that the consular officer failed to follow regulations," "where the applicant challenges the validity of the regulations on which the decision was based," where the decision is alleged to have been based on a factual, procedural, or legal error, or where the applicant challenges "the process followed." *Chun v. Powell*, 223 F. Supp. 2d 204, 206 (D.D.C. 2002) (citations omitted); *see Capistrano*, 267 F. App'x at 594-95 ("That the Appellants characterize their complaint as one challenging the process followed by the consulate rather than its ultimate decision does not exempt the case from this well-settled doctrine.").[5]

24
25
26

---

[5]    *See also De Castro v. Fairman*, 164 F. App'x 930, 932-33 (11th Cir. 2006) (finding doctrine applies to claims that visa denial "was not based on any evidence" and "constituted legal

DEFENDANTS' MOTION TO DISMISS

12
Case No. 2:18-cv-01122-JLR

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL DCS
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 532-4094

Indeed, courts have repeatedly rejected "attempts to circumvent the doctrine by claiming [plaintiffs are] not seeking a review of the consular officer's decision, but [are] challenging some other, related aspect of the decision." *Malyutin v. Rice*, 677 F. Supp. 2d 43, 46 (D.D.C. 2009) (citing cases), *summarily aff'd* No. 10-5015, 2010 WL 2710451 (D.C. Cir. July 6, 2010), *cert denied*, 562 U.S. 1140 (2011); *Van Ravenswaay*, 613 F. Supp. 2d at 3-5 (finding statutory waivers to visa denials to be discretionary decisions that are barred from judicial review by the INA). Thus, even if Plaintiffs' challenge is characterized "as one challenging the process followed [in relation to adjudicating their visa applications consistently with the Proclamation] rather than [any] ultimate decision" rendered by a consular officer, this case is not "exempt[ed]" from the principles of the consular nonreviewability doctrine. *Capistrano*, 267 F. App'x at 594.

To appreciate the connection between challenges to the procedure by which visa applications are adjudicated and to the actual adjudications themselves, one only need look at Plaintiffs' claims for relief. Plaintiffs ask this Court to declare that the actions of Defendants (including officers and agents of the State Department "involved in deciding whether a waiver

---

error"); *Ventura-Escamilla v. INS*, 647 F.2d 28, 32 (9th Cir. 1981); *Hussein v. Beecroft*, No. 17-cv-12356, 2018 WL 3574717, at *6 (E.D. Mich. July 25, 2018) ("Whether or not the consular officer disregarded other information submitted by petitioners—unreasonably, or even unlawfully—is of no consequence to *this* case[.]" (emphasis in original)); *Rodgers v. Lynch*, No. 16-cv-4398, 2016 WL 10966384, at *2 & n.4 (C.D. Cal. Nov. 9, 2016) (applying doctrine to challenges to the consular officer's manner of considering the application for a waiver); *ZigZag, LLC v. Kerry*, No. 14-cv-14118, 2015 WL 1061503, at *4 (D. Mass. Mar. 10, 2015) (applying doctrine to procedural challenge that the consular officer did not properly interview the applicant); *Toor v. Clinton*, No. 1:09-cv-279, 2009 WL 1582900, at *5 (E.D. Cal. Jun. 4, 2009) (applying doctrine to the process by which the U.S. Embassy reconsiders a visa application); *Nwansi v. Rice*, No. 06-cv-0003, 2006 WL 2032578, at *3-5 (N.D. Cal. Jul. 18, 2006) (finding doctrine applies to challenges to violations of State Department guidelines); *Ruston*, 29 F. Supp. 2d at 522-23 (finding claims challenging failure to provide notice of intent to revoke visa immune from judicial review).

DEFENDANTS' MOTION TO DISMISS

13

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL DCS
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 532-4094

should be granted"—thus, including consular officers) have been arbitrary, capricious, and unlawful. Complaint (Dkt. 1) at 65 (prayer for relief). To make any such declaration, however, would require the Court to review the discretionary determinations of consular officers and judge them to have been made in error. *See Capistrano*, 267 F. App'x at 594-95; *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986) ("consular official's decision to issue or withhold a visa is not subject either to administrative or judicial review"). Plaintiffs' challenges to the "procedures" by which they were denied waivers are inextricably intertwined with the actual discretionary denials of those same waivers. And as discussed above, "[i]ssuing such relief would be exactly what the doctrine of consular nonreviewability prevents [this Court] from doing." *See id.* at 595.

**B. Plaintiffs' challenge to Defendants' actions in implementing the Proclamation is not justiciable because there is a lack of meaningful standards against which to judge those actions.**

Judicial review of the implementation of the Proclamation, including its waiver provisions, is additionally unavailable under the APA because executive orders are traditionally unreviewable and there would be no standard for the Court to apply where the Proclamation is a lawful exercise of the President's "discretion" pursuant to 8 U.S.C. § 1182(f), through an executive order. *Hawaii*, 138 S. Ct. at 2407-09, 2422-23 & n.7 ("By its terms, § 1182(f) exudes deference to the President in every clause" and "grants the President broad *discretion* to suspend the entry of aliens into the United States." (emphasis added)). Courts, including the Ninth Circuit, have consistently held that use of the word "may" signifies discretion. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 844 (2018); *Wilson v. C.I.R.*, 705 F.3d 980, 1001 (9th Cir. 2013). And here, the Proclamation specifies that

DEFENDANTS' MOTION TO DISMISS

14

Case No. 2:18-cv-01122-JLR

waivers *may* be granted "in [the agency's] discretion." Proclamation, § 3(c); *see also id.* § 9(c) (no judicial review clause).

Further, even if implementation of the Proclamation's entry restrictions were not an explicitly discretionary function, it involves decisions that are "traditionally" unreviewable, and there is simply "no law to apply." *Lincoln v. Vigil*, 508 U.S. 182, 191-92 (1993); *Heckler v. Chaney*, 470 U.S. 821, 830-31 (1985); *see also Haitian Refugee Ctr.*, 953 F.2d at 508 (finding no meaningful standard of review because the executive order "in no way limit[ed] the discretion of INS officials in their determination of who qualifies as a refugee or the procedures to be used to make such a determination"). The Proclamation is broadly worded and does not itself define terms such as "undue hardship" or "national interest" with regard to waiver adjudications. Proclamation, § 3(c). Instead, just as all visa adjudications call for the exercise of judgment and discretion by consular officers, application of the Proclamation's waiver criteria demands that consular officers rely on their own judgment and expertise. Plaintiffs thus are unable to advert to anything that would provide a judicially manageable standard against which this Court can determine how and when Defendants should exercise their discretion to grant or deny waivers. *See Webster v. Doe*, 486 U.S. 592, 599-601 (1988); *Ekimian v. INS*, 303 F.3d 1153, 1157-58 (9th Cir. 2002) (finding no judicially reviewable standard to examine BIA's decision not to reopen a case).

Decisions involving the entry of foreign nationals are clearly "the product of political, military, economic, or managerial choices that are not readily subject to judicial review." *Local 2855, AFGE (AFL-CIO) v. United States*, 602 F.2d 574, 579 (3d Cir. 1979). When deciding whether to grant a waiver, consular officers must balance the national interest, the specific concerns raised in the case of each foreign national, and threats to national security and public

DEFENDANTS' MOTION TO DISMISS

15

Case No. 2:18-cv-01122-JLR

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL DCS
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 532-4094

safety, which are particularly within the agencies' expertise. *See* Proclamation, § 3(c). Such choices are reserved to the political branches, not the judiciary. *See Hawaii*, 138 S. Ct. at 2415, 2421-22; *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948). As the Ninth Circuit recently explained, consular officers do not make "*legal* determinations" easily reviewable by a court. *Allen*, 896 F.3d at 1107 & n.3 (emphasis in original) (noting consular officers "may or may not have any formal legal training"); *see also Haitian Refugee Ctr.*, 953 F.2d at 507-08 (holding that section 701(a)(2) of the APA barred plaintiffs' challenges to the procedures used by the "President's subordinates" to carry out his executive order issued pursuant to 8 U.S.C. § 1182(f)). Accordingly, consular officers' decisions to grant or deny waivers are "committed to agency discretion by law" and thus immune from judicial review. 5 U.S.C. § 701(a)(2).

## II. Plaintiffs fail to state a claim for any violation of the Proclamation or agency regulations.

Even assuming the Court has subject matter jurisdiction to review the implementation of the Proclamation, the Court should dismiss this case in its entirety for failure to state a claim under the Proclamation itself, the INA, or any agency regulations on which relief can be granted. In their Complaint, Plaintiffs posit that Defendants' actions in implementing the Proclamation have not conformed to certain rules and guidelines set out in the Proclamation, such as "the eligibility criteria for a waiver and the exemplar situations in which a waiver may be appropriate," and thus should "be set aside under the principle articulated in *United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)." Complaint (Dkt. 1) ¶ 290, 293. Plaintiffs, however, provide little support or explanation for their claim, failing to distinguish between regulations, which carry the force of law, and proclamations, which, as a general matter, are management tools for

DEFENDANTS' MOTION TO DISMISS

16

Case No. 2:18-cv-01122-JLR

implementing the President's policies, as opposed to legally binding documents that may be enforced against the Executive Branch.[6] As the Supreme Court made clear in *Accardi*, "[t]he crucial question is whether the alleged conduct of the Attorney General deprived petitioner of any of the rights *guaranteed him by the statute or by the regulations issued pursuant thereto*." 347 U.S. at 502 (emphasis added). Thus, here, the applicability of the *Accardi* doctrine hangs on a finding that the Proclamation—which, in any event, is not a regulation or a statute—provides Plaintiffs with some protectable interest. The Proclamation, however, confers no such enforceable rights. Indeed, it is well-settled that "there is no private right of action to enforce obligations imposed on executive branch officials by executive orders." *Chai v. Carroll*, 48 F.3d 1331, 1338 (4th Cir. 1995) (internal quotations and citation omitted); *see Haitian Refugee Ctr., Inc.*, 953 F.2d at 1510-11 (holding that plaintiffs failed to state a claim because the President's executive order pursuant to Section 1182(f) did "not give rise to a private cause of action."), *cert. denied*, 502 U.S. 1122 (1992); *U.S. Dep't of Health & Human Servs. v. Fed. Labor Relations Auth.* ("*HHS*"), 844 F.2d 1087, 1095 (4th Cir. 1988) (en banc); *Chen v. Schiltgen*, No. 94-cv-4094-MHP, 1995 WL 317023, at *6 (N.D. Cal. May 19, 1995) ("It is not the role of this court to ensure that the Attorney General complies with the President's directive."). Because Plaintiffs' suit is not an effort to enforce compliance with congressional directives, but "an indirect—and impermissible—attempt to enforce" compliance with Executive ones, it should be dismissed. *Air Transport Ass'n of America v. F.A.A.*, 169 F.3d 1, 8-9 (D.C. Cir. 1999); *see Haitian Refugee Ctr.*, 953 F.2d at 510-11.

---

[6]     The terms "proclamation" and "executive order" are used interchangeably since both are directives or actions by the President.

DEFENDANTS' MOTION TO DISMISS

17

Case No. 2:18-cv-01122-JLR

There is a narrow exception to the general rule that executive orders are not privately enforceable, but it does not apply to this case. To be enforceable, an executive order must, at a minimum, (1) have a "specific statutory foundation," (2) "not preclude judicial review," and (3) have "law to apply"—that is, an objective standard by which a court can judge the agency's actions. *City of Carmel-By-The-Sea v. U.S. Dep't of Transp.*, 123 F.3d 1142, 1166 (9th Cir. 1997). Here, the Proclamation is based on 8 U.S.C § 1182(f), which allows the President to "suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate," whenever he finds that such entry would be detrimental to the interests of the United States. Thus, while the Proclamation does have a "specific statutory foundation," that foundation, far from setting out any standards to which the agencies must conform or allowing of any private causes of action against the Government, simply affirms the President's broad discretion over the admission of aliens to the United States.

As to the second requirement, the Proclamation contains express language precluding judicial review. *See Carmel-By-The-Sea*, 123 F.3d at 1166. The Proclamation specifically states that it "is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person." Proclamation, § 9(c). Courts have interpreted similar "no administrative or judicial review" clauses in a proclamation or executive order to preclude private enforcement through an APA action. *See Nat'l Ass'n of Gov't Emps. v. FLRA*, 204 F.3d 1272, 1276 (9th Cir. 2000); *Nat'l Ass'n of Gov't Emps. v. FLRA*, 179 F.3d 946, 951 (D.C. Cir. 1999); *Air Transport Ass'n of America*, 169 F.3d at 8-9; *Meyer v. Bush*,

DEFENDANTS' MOTION TO DISMISS

18

Case No. 2:18-cv-01122-JLR

981 F.2d 1288, 1297 & n.8 (D.C. Cir. 1993); *Dettling v. United States*, 948 F. Supp. 2d 1116, 1125-26 (D. Haw. 2013).

Lastly, with regard to the third requirement, as discussed above, there is no "law to apply" or "objective standard" by which a court could judge the agencies' actions here. *See Carmel-By-The-Sea*, 123 F.3d at 1166. Specifically, there is no administrative regulation or statute by which to measure the State Department's guidance to a consular officer regarding "national security or public safety" and "the national interest" as the officer assesses an applicant's eligibility for a waiver. Proclamation, § 3(c); *Hawaii*, 138 S. Ct. at 2412 (explaining that 8 U.S.C. § 1182(f) "vests authority in the President to impose *additional* limitations on entry *beyond* the grounds for exclusion set forth in the INA (emphases added)). This is unsurprising, given Congress's intent to vest the Executive with "flexible authority" and "broad discretion" over who is permitted to enter the United States. *Hawaii*, 138 S. Ct. at 2408, 2415; *see Haitian Refugee Ctr.*, 953 F.2d at 510. The Proclamation vests the agencies with authority to carry out the President's mandate, and it directs them to exercise their "discretion" in deciding whether to "grant waivers on a case-by-case basis" in light of "individual circumstances," as opposed to "categorically." Proclamation, § 3(c). Such directives are far from "sufficiently specific and objective" to warrant judicial review of the determinations of consular officers implementing the Proclamation—which necessarily implicate the Executive's core foreign-affairs and national-security responsibilities—and also run afoul of consular nonreviewability.

In addition to stating no cognizable claim for relief for any violation of the Proclamation itself, Plaintiffs are unable to establish that Defendants, in implementing the Proclamation, have contravened 22 C.F.R. §§ 41.121 and 42.81, which provide that a consular officer who knows or

DEFENDANTS' MOTION TO DISMISS

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL DCS
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 532-4094

has reason to believe a visa applicant is ineligible must inform the alien "whether there is, in law or regulations, a mechanism (such as a waiver) to overcome the refusal." As explained above, all applicants who are denied visas based on the Proclamation are automatically considered for a waiver under section 3(c) of the Proclamation. *See* State Dep't Website. Plaintiffs, in fact, admit that many of the individuals who were granted consular interviews after the Proclamation went into effect were given letters "notifying them that they had been denied a waiver and a visa." Complaint (Dkt. 1) ¶ 127. Plaintiffs also do not dispute that each visa applicant Plaintiff has been informed of the denial, grant, or further consideration of a waiver.[7] *Id.* ¶¶ 163-254. Notwithstanding Plaintiffs' desire that the State Department provide specific and formal procedures for visa applicants to affirmatively submit unsolicited documents to consular officials for consideration, neither regulation mandates such relief.

In short, where the Proclamation does not satisfy the three necessary requirements for private enforceability, this Court should dismiss Plaintiffs' Complaint for failure to state a claim. *See Haitian Refugee Ctr.*, 953 F.2d at 510-11.

**III.   Plaintiffs fail to state a constitutional claim.**

Plaintiffs' claim that the Proclamation violates the Due Process Clause of the Fifth Amendment also lacks merit. First, there is no fundamental right to reside in the United States with

---

[7]     Plaintiffs also claim that a limited number of them or their family members had their visa application interviews before the waiver process was implemented and thus were denied the opportunity to present evidence related to their waiver eligibility during an interview. Complaint (Dkt. 1) ¶¶ 171, 182, 187-88, 199, 212, 222, 227. Under the doctrine of consular nonreviewability, this Court lacks jurisdiction to review a consular officer's determination that a second interview was not needed because he had sufficient information to adjudicate the visa applicant's waiver eligibility. *Li Hing*, 800 F.2d at 971.

DEFENDANTS' MOTION TO DISMISS

20

Case No. 2:18-cv-01122-JLR

noncitizen family members. Second, even assuming that certain plaintiffs had a protected liberty or property interest, they would have been provided all the process that was due.

    **A.**    **Plaintiffs' due process claim fails because there is no fundamental right to reside in the United States with non-citizen family members.**

Substantive due process protects those rights that rank as "fundamental"—that is, both "objectively, deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (citation omitted). The Supreme Court has also made clear that a plaintiff must provide "a 'careful description' of the asserted fundamental liberty interest" when raising such a claim. *Chavez v. Martinez*, 538 U.S. 760, 775-76 (2003). "[V]ague generalities" do not suffice. *Id.* at 776.

Plaintiffs have not met and cannot meet that standard. First, "unadmitted and nonresident alien[s]" have "no constitutional right of entry into the country." *Mandel*, 408 U.S. at 762. Second, the Ninth Circuit has recognized there is no "right to family unity" that allows one to reside in the United States "simply because other members of their family are citizens or lawful permanent residents." *De Mercado v. Mukasey*, 566 F.3d 810, 816 n.5 (9th Cir. 2009); *see Sianipar v. Holder*, 584 F. App'x 353, 354 (9th Cir. 2014) (rejecting due process claim based on family unity considerations); *see also Carrasco-Escobar v. Lynch*, 670 F. App'x 538 (9th Cir. 2016); *Mendoza-Calvillo v. Holder*, 521 F. App'x 579 (9th Cir. 2013); *Luna-Mastache v. Holder*, 469 F. App'x 546, 547 (9th Cir. 2012).

In *Gebhardt v. Nielsen*, the plaintiff brought a substantive due process claim attacking the denial of a visa petition filed on behalf of his non-citizen wife and her children, asserting that he

DEFENDANTS' MOTION TO DISMISS

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL DCS
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 532-4094

had a fundamental right to preserve the integrity of his family. 879 F.3d 980, 988 (9th Cir. 2018). The Ninth Circuit rejected his claim, holding that "the generic right to live with family is far removed from the specific right to reside in the United States with non-citizen family members." *Id.* (internal quotation marks omitted). The court in *Gebhardt* found that "a fundamental right to reside in the United States with [one's] non-citizen relatives'" "would "run[ ] headlong into Congress' plenary power over immigration." *Id.* Similarly, in *Morales-Izquierdo v. Dep't of Homeland Sec.*, the Ninth Circuit held that "lawfully denying plaintiff's adjustment of status does not violate any of his or his family's substantive rights protected by the Due Process Clause" even "when the impact of our immigration laws is to scatter a family or to require some United States citizen children to move to another country with their parent." 600 F.3d 1076, 1091 (9th Cir. 2010) *overruled in part on other grounds by Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) (en banc). Thus, where Plaintiffs posit that "United States citizens and lawful permanent residents have constitutionally protected liberty interests in family reunification and in the ability of their family members to travel to the United States," Complaint (Dkt. 1) ¶ 304, they are roundly repudiated by the courts.

  **B.**  **Plaintiffs' procedural due process claim fails as any plaintiff with a protected liberty or property interest would have been accorded all the process that he or she was due.**

  The Supreme Court has held that, for due process purposes, what might be described as a benefit "is not a protected entitlement"—whereas the former may be granted or denied in the discretion of a government official, the latter may not. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (holding that an individual did not have a property interest in police enforcement of a restraining order issued pursuant to state law). Plaintiffs' procedural due process

DEFENDANTS' MOTION TO DISMISS

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL DCS
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 532-4094

claim fails because they do not have a liberty or property interest in the grant of one of the waivers made available under the Proclamation to visa applicants on a case-by-case basis. Because those waivers are purely discretionary, they qualify as benefits, and not as protected entitlements. *See, e.g.*, *Mendez-Garcia v. Lynch*, 840 F.3d 655, 665 (9th Cir. 2016) (aliens have no cognizable due process interest in discretionary immigration relief); *Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003) (same).

As previously discussed, Plaintiffs also do not have a protected liberty or property interest in family reunification that warrants any process. As "unadmitted and nonresident alien[s]," the visa applicant plaintiffs in particular have "no constitutional right of entry into the country," *Mandel*, 408 U.S. at 762, and "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned," *Shaughnessy*, 338 U.S. at 544. *See Bustamante v. Mukasey*, 531 F.3d 1059, 1062-63 (9th Cir. 2008); *Li Hing*, 800 F.2d at 970.

Further, even assuming that a United States citizen or lawful permanent resident had any protected liberty or property interest in being reunited with a foreign national family member, Defendants afforded them all the process that was due by providing a statutory citation justifying the visa denials. *Hawaii*, 138 S. Ct. at 2420. As the Supreme Court has held, "respect for the political branches' broad power over the creation and administration of the immigration system mean[s] that the Government need provide only a statutory citation to explain a visa denial." *Id.* at 2419 (internal quotation marks omitted). For the foregoing reasons, Plaintiffs have failed to state an actionable procedural due process claim, and the Court should dismiss their Complaint.

DEFENDANTS' MOTION TO DISMISS

23

Case No. 2:18-cv-01122-JLR

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL DCS
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 532-4094

**IV.     Plaintiffs' general claims regarding the waiver assessment process, lack of guidance, and supposed "mass form denials" are without merit.**

Even if review of the implementation of the Proclamation's waiver provision were reviewable, Plaintiffs' claims targeting the waiver assessment process, issuance of guidance, and supposed "mass form denials" are foreclosed by the express terms of the Proclamation, publicly available information, the Supreme Court's decision in *Hawaii*, and the favorable adjudications of waivers rendered by consular officers. Plaintiffs cannot plausibly contend that they were not properly considered for a waiver in connection with their visa applications: Plaintiffs acknowledge in their Complaint that each member of the putative Visa Member Subclass has been informed that he had been refused a visa under the Proclamation and either that he was not eligible for a waiver or that his case was being further considered for a waiver. While Plaintiffs ask this Court to order Defendants to publicly issue guidance of some sort regarding the waiver provision and then to reconsider all visa (and waiver) denials, their argument fundamentally misunderstands the waiver process under the Proclamation and its requirements.

Although section 3(c) places the burden on the applicant to "demonstrate" that a waiver would be appropriate, there is no process separate from the visa-application process by which applicants "submit a waiver" under the Proclamation. *See* State Dep't Website. Instead, consistent with publicly available guidance from the Department of State, *all* visa applicants who are refused under the Proclamation are automatically considered for a waiver. *See id.* As the State Department has publicly explained, in adjudicating visa applications, a consular officers assesses, as part of normal visa processing, all the information an applicant submits at the interview to determine whether the applicant has demonstrated eligibility for a discretionary waiver:

DEFENDANTS' MOTION TO DISMISS

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL DCS
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 532-4094

> There is no separate application for a waiver. An individual who seeks to travel to the United States should apply for a visa and disclose during the visa interview any information that might demonstrate that he or she is eligible for a waiver.

*Id.* Thus, Plaintiffs are able to rely on the Proclamation and public State Department guidance, which set forth the waiver eligibility factors and provide examples of cases that may qualify for a waiver. *See id.* ("The Proclamation provides several examples . . . of cases that may be appropriate for consideration for a waiver, on a case-by-case basis, when in the national interest, when entry would not threaten national security or public safety, and [when] denial would cause undue hardship. Among the examples provided, a foreign national who seeks to enter the United States for urgent medical care may be considered for a waiver."); *see also* Proclamation, § 3(c)(iv)(A) (listing examples of when a discretionary waiver might be appropriate.).

Under State Department guidance and without the need for a separate waiver application, consular officers have continued to consider whether visa applicants around the world who are covered by the Proclamation are eligible for a discretionary waiver. As previously mentioned, the State Department reports that 1,836 waivers were granted as of September 30, 2018. *See* State Dep't Website. Plaintiffs cannot dispute that, in the short time since the Proclamation became effective, the State Department has reviewed many thousands of visa applications and continues to grant waivers. Many more applications are still awaiting review to ensure that the applicants pose no risk to national-security or public-safety, which is a time-consuming process. Conclusory assertions that the Government has a policy of "mass form denials" of waivers and has withheld from Plaintiffs the opportunity to demonstrate eligibility for a waiver do not constitute a claim on which relief can be granted.

DEFENDANTS' MOTION TO DISMISS

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL DCS
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 532-4094

Further, nothing in the Proclamation imposes on the Government a duty to make public its internal guidance to consular officers. Proclamation, § 3(c). The lack of such a requirement makes sense in light of the sensitive nature of the instructions given to consular officers—the same reason that some of the guidance to consular officers regarding visa application examinations is not publicly available. *See* Ex. A at 6; *see also* 8 U.S.C. § 1202(f) (stating that the records of diplomatic and consular offices pertaining to the issuance or refusal of visas shall be considered confidential and used only for the formulation or enforcement of laws, with limited exceptions, including crime prevention). In any event, the guidance on the waiver process and the Proclamation's requirements which the State Department has already made public satisfies any possible claim that the Proclamation requires information on the waiver process be made publicly available. *See* State Dep't Website.

Lastly, as to Plaintiffs' indications that the number of waivers granted has been unacceptably low, the Supreme Court in *Hawaii* expressly rejected arguments very similar to those raised here about the paucity of waivers. *See Hawaii*, 138 S. Ct. at 2422-23. The Supreme Court dismissed the relevance of "selective statistics" and "anecdotal evidence" to "suggest[ ] that not enough individuals are receiving waivers or exemptions." *Id.* at 2423 n.7; *see id.* at 2431-33 (Breyer, J., dissenting) (referencing the declaration of Christopher Richardson, attached to Plaintiffs' Complaint as Exhibit A). If this Court were to try to assay the statistical information relating to waiver grants and determine whether the figures are in fact somehow too low, it would have to judge the "correctness" of individual discretionary decisions rendered by consular officers, a task that the doctrine of consular nonreviewability precludes the Court from undertaking.

DEFENDANTS' MOTION TO DISMISS

26

Case No. 2:18-cv-01122-JLR

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL DCS
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 532-4094

## CONCLUSION

For all the foregoing reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.

Dated: October 2, 2018

JOSEPH H. HUNT
Assistant Attorney General

SCOTT G. STEWART
Deputy Assistant Attorney General

AUGUST E. FLENTJE
Special Counsel

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

GISELA A. WESTWATER
Assistant Director, Office of Immigration Litigation
District Court Section

*/s/ David Kim*
DAVID KIM
NICOLE P. GRANT
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 532-4094

Attorneys for the Federal Defendants

DEFENDANTS' MOTION TO DISMISS

27

Case No. 2:18-cv-01122-JLR

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL DCS
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 532-4094

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2018, I filed the foregoing document with the Clerk of the Court through the Court's ECF system and that the foregoing document will be served electronically upon registered participants identified on the Notice of Electronic Filing.

Dated:  October 2, 2018          */s/ David Kim*
                                 DAVID KIM
                                 Trial Attorney
                                 U.S. Department of Justice, Civil Division
                                 Office of Immigration Litigation

DEFENDANTS' MOTION TO DISMISS                   U.S. DEPARTMENT OF JUSTICE
                                                CIVIL DIVISION, OIL DCS
                                      P.O. BOX 868, BEN FRANKLIN STATION
28                                              WASHINGTON, DC 20044
Case No. 2:18-cv-01122-JLR                      TELEPHONE: (202) 532-4094