UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PARS EQUALITY CENTER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MIKE POMPEO, et al., <br><br> Defendants. | CASE NO. C18-1122JLR <br><br> ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE |

## I. INTRODUCTION

Before the court is Defendants Mike Pompeo, Kirstjen M. Nielsen, Kevin K. McAleenan, United States Department of Homeland Security, United Sates Department of State, and United States Customs and Border Protection's (collectively, "Defendants") motion to transfer venue. (Mot. (Dkt. # 55).) Plaintiffs Pars Equality Center ("Pars Equality"), OneAmerica, Pamela Whitehall Raghebi, Afshin Raghebi, Zeinab Mohamed Hassan, Siraji Etha Siraji, Malayeen Ahmed, Reza Azimi, Yahya Ghaleb, Mitra Hannani, Nicholas Hanout, Hossein Zamani Hosseinabadi, John Does 1-3, and Jane Doe 1

ORDER - 1

(collectively "Plaintiffs") oppose the motion. (Resp. (Dkt. # 56).) Defendants filed a reply. (Reply (Dkt. # 63).) The court has considered the motion, the parties' submissions concerning the motion, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS Defendants' motion to transfer venue for the reasons set forth below.

## II. BACKGROUND

This lawsuit challenges Defendants' implementation of the waiver provision set forth in Presidential Proclamation No. 9645, entitled "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public-Safety Threats" ("EO-3").[2] *See* Proclamation No. 9,645, 82 Fed. Reg. 45,161 (Sept. 27, 2017); (Compl. (Dkt. # 1).) President Trump promulgated EO-3 in September 2017, following months of legal challenges to Executive Order No. 13,769, 82 Fed. Reg. 8,977 (Jan. 27, 2017) ("EO-1") and Executive Order No. 13,780, 82 Fed. Reg. 13,209 (Mar. 6, 2017) ("EO-2"). Among other measures, EO-1 and EO-2 imposed entry and immigration restrictions on noncitizens from several majority-Muslim countries. *See*

//

---

[1] No party requests oral argument on Defendants' motion (*see* Mot. at 1; Resp. at 1), and the court has determined that oral argument would not be of assistance in deciding the motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] The parties refer to Presidential Proclamation No. 9645 as "the Proclamation" (Mot. at 1; Resp. at 2), as did the Supreme Court in *Trump v. Hawaii*, -- U.S. --, 138 S. Ct. 2392 (2018). However, the court refers to the Proclamation as "EO-3," so as to be consistent with the terminology employed in the court's prior orders concerning the President's executive actions on immigration and refugee admissions. *See, e.g.*, *Doe v. Trump*, 288 F. Supp. 3d 1045 (W.D. Wash. 2018).

*Doe v. Trump*, 288 F. Supp. 3d 1045, 1055-57 (W.D. Wash. 2018) (summarizing EO-1 and EO-2).

EO-3 indefinitely bars from entering the United States all immigrants and various categories of nonimmigrants from Iran, Libya, North Korea, Somalia,[3] Syria, and Yemen. *See* EO-3 § 2. Section 3(c) of EO-3 ("the waiver provision") provides that nationals of these countries may be permitted entry on a "case-by-case" basis if they apply for and are granted a waiver. *Id.* § 3(c). Under the waiver provision, a consular officer or designee of the Commissioner of Customs and Border Protection, may, in his or her discretion, grant a waiver to a foreign national subject to EO-3 if the officer finds that the foreign national satisfies three criteria: (1) "denying entry would cause the foreign national undue hardship"; (2) "entry would not pose a threat to the national security or public safety of the United States"; and (3) "entry would be in the national interest." *Id.* § 3(c)(i). In addition, EO-3 directs the Secretary of State and the Secretary of Homeland Security to "coordinate to adopt guidance addressing the circumstances in which waivers may be appropriate for foreign nationals seeking entry as immigrants or nonimmigrants." *Id.* § 3(c).

Shortly after he promulgated EO-3, President Trump issued Executive Order No. 13,815, entitled "Resuming the United States Refugee Admissions Program with Enhanced Vetting Capabilities" ("EO-4"). *See* Executive Order No. 13, 815, 82 Fed.

---

[3] EO-3 subjects to "additional scrutiny" nationals of Somalia who seek to enter the United States as nonimmigrants, but does not categorically suspend the entry of any class of nonimmigrants of Somali origin. *See* EO-3 § 2(h)(ii).

Reg. 50,055 (Oct. 24, 2017). Notwithstanding EO-4's title, the memorandum that accompanied EO-4—known as the "Agency Memo"—imposed another ban on certain categories of refugees. *See Doe*, 288 F. Supp. 3d at 1057-59 (describing the Agency Memo). Additionally, the Agency Memo indefinitely suspended the entry of following-to-join ("FTJ") derivative refugees to the United States. *See id.*

The President's executive actions on immigration and refugee admissions have prompted a number of legal actions, including *Doe, et al. v. Trump, et al.*, C17-0178JLR (W.D. Wash.) ("*Doe*"), originally filed in February 2017 as a challenge to EO-1. *See Doe*, Dkt. # 1. *Doe* plaintiffs, who include refugees as well as individuals with lawful nonimmigrant status, amended their complaint after the subsequent executive actions. *Id.*, Dkt. ## 10, 30, 42. Their third amended complaint, filed on November 6, 2017, challenges both EO-3 and the Agency Memo that accompanied EO-4. *Id.*, Dkt. # 42. On December 23, 2017, this court enjoined federal officials from enforcing those provisions of the Agency Memo that suspended the processing and admission of FTJ applicants and refugees from select countries.[4] *See Doe*, 288 F. Supp. 3d at 1086. Neither that order nor any subsequent order in *Doe* addressed EO-3's waiver provision.

On July 31, 2018, Plaintiffs filed the present action in the Western District of Washington. (*See* Compl.) The case was reassigned, as related to *Doe*, to the undersigned Judge. (*See* Not. of Related Case (Dkt. # 39).) Plaintiffs allege that

---

[4] Shortly before the court issued the preliminary injunction, *Doe* was consolidated with *Jewish Family Serv. of Seattle, et al. v. Trump, et al.*, No. C17-1707JLR (W.D. Wash.), which challenged EO-4 and the Agency Memo. *See Doe*, Dkt. ## 52, 60, 61.

ORDER - 4

Defendants' implementation of EO-3's waiver provision violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(B), and the Due Process Clause of the Fifth Amendment. (Compl. ¶¶ 278-306.) In brief, Plaintiffs argue that the waiver provision "has been implemented in such a haphazard, opaque, and capricious manner, and so few visa applicants have actually been granted waivers under [EO-3], that the process by which waivers are supposedly granted has become part and parcel of the ban [effected by EO-3] itself." (*Id.* ¶ 2.)

Individual Plaintiffs challenge Defendants' implementation of the waiver provision as representatives of three putative subclasses. (*Id.* ¶ 269.) The "U.S. Petitioner Subclass" includes "[i]ndividuals in the United States with an approved petition to be reunited with [a] family member[]" who is (i) a national of Iran, Libya, Somalia, Syria, or Yemen, (ii) subject to EO-3, and (iii) currently awaiting a decision on a waiver or has been denied a waiver. (*Id.* ¶ 269(a).) The "Lawfully Present Foreign National Subclass" includes nationals of Iran, Libya, Somalia, Syria, or Yemen "who are lawfully present in the United States [and] who, but for the uncertainty created by [EO-3] and Defendants' implementation of the waiver provision, wish to travel abroad and return to the United States." (*Id.* ¶ 269(b).) Finally, the "Visa Applicant Subclass" includes "[i]ndividuals who have applied for a visa" who are (i) nationals of Iran, Libya, Somalia, Syria, or Yemen, (ii) subject to EO-3, and (iii) currently awaiting a decision on a waiver or have been denied a waiver. (*Id.* ¶ 269(c).)

This action is not the only pending challenge to EO-3's waiver provision. On March 13, 2018, plaintiffs comprising U.S. citizens and lawfully present foreign nationals

filed a putative class action in the Northern District of California, challenging the government's implementation of the waiver provision. *See Emami, et al. v. Nielson, et al.*, 3:18-cv-01587-JD (N.D. Cal.) ("*Emami*"), Dkt. # 1. Like Plaintiffs here, *Emami* plaintiffs allege that the government's implementation of the waiver provision violates the APA and the Due Process Clause of the Fifth Amendment. *Id.*, Dkt. # 34 ¶¶ 315-334. *Emami* plaintiffs include two subclasses. The "Family Member Class" comprises "United States citizens and lawful permanent residents with approved family-based visa petitions or whose family members have applied for visa categories covered by [EO-3], and whose family members have been or will be refused pursuant to [EO-3] without an opportunity to apply for and be meaningfully considered for a waiver or are awaiting adjudication of a waiver." *Id.* ¶ 11. The "Visa Applicant Class" comprises "Iranian, Libyan, Somali, Syrian, and Yemeni nationals who have applied for immigrant or nonimmigrant visas [who] have been or will be refused pursuant to [EO-3] without the opportunity to apply for and be meaningfully considered for a waiver or who are awaiting adjudication of a waiver." *Id.* ¶ 12.

On September 24, 2018, Defendants filed the instant motion to transfer venue. (*See* Mot.) Defendants argue that this action should be transferred to the Northern District of California and consolidated with *Emami* under the first-to-file rule, because the two cases present nearly identical claims on behalf of substantially similar putative classes. (Mot. at 5-13.) Plaintiffs, in contrast, contend that this case is closely related to *Doe*, such that *Doe* should be considered the first-filed action. (Resp. at 5-6.) Plaintiffs further argue that the convenience considerations embraced by the federal transfer statute,

28 U.S.C. §1404(a), weigh against transfer. (*Id.* at 6-12.) The court now turns to Defendants' motion.

### III. ANALYSIS

#### A. Legal Standard

The first-to-file rule is a "generally recognized doctrine of federal comity" that allows a district court to transfer, stay, or dismiss an action if a case with substantially similar issues and parties was previously filed in another district court. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94 (9th Cir. 1982); *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239-40 (9th Cir. 2015). "The rule is primarily meant to alleviate the burden placed on the federal judiciary by duplicative litigation and to prevent the possibility of conflicting judgments." *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292 (N.D. Cal. 2013). Accordingly, the first-to-file rule "should not be disregarded lightly." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (quoting *Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979)).

When deciding whether to transfer, stay, or dismiss a case under the first-to-file rule, a district court analyzes three factors: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Kohn*, 787 F.3d at 1240; *see also Bewley v. CVS Health Corp.*, No. C17-0803RSL, 2017 WL 5158443, at *2 (W.D. Wash. Nov. 7, 2017). Notwithstanding these specific factors, the first-to-file rule "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Decker Coal Co. v.*

*Commonwealth Edison Co.*, 805 F.2d 834, 844 (9th Cir. 1986); *see also Kohn*, 787 F.3d at 1240 (quoting *Cradle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999)) ("When applying the first-to-file rule, courts should be driven to maximize 'economy, consistency, and comity.'"). As a result, "[t]he most basic aspect of the first-to-file rule is that it is discretionary." *Alltrade*, 946 F.2d at 628.[5]

## B. First-to-File Factors

Defendants' motion argues in favor of an uncomplicated application of the first-to-file factors. According to Defendants, transfer is warranted under the first-to-file rule because this case is not related to *Doe*, was filed some four months after *Emami*, and shares substantially the same issues and parties as *Emami*. (Mot. at 5-9.) Plaintiffs, in contrast, argue that transfer is not warranted under the first-to-file rule because *Doe* "is the longest-pending case challenging the Trump administration's implementation of [EO-3's] waiver provision and . . . is related to this case." (Resp. at 1.) Plaintiffs further argue that the convenience factors embraced by the federal transfer statute, 28 U.S.C. § 1404(a), weigh against transfer. (*Id.* at 6-12.)

At the outset, the court addresses Defendants' contention that *Doe* "do[es] not reveal any clear challenge to . . . [EO-3's] waiver provision or the manner in which the Government has put that provision into effect" and thus should not bear on the court's first-to-file analysis. (Rep. at 3.) On the face of their complaint, *Doe* plaintiffs'

---

[5] A court may decline to apply the first-to-file rule "for reasons of equity," such as "when the filing of the first suit evidences bad faith, anticipatory suit, or forum shopping." *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006); *see also Alltrade*, 946 F.2d at 628. Plaintiffs do not allege that any such circumstances are present here. (*See generally* Resp.)

ORDER - 8

challenges to the waiver provision are perhaps less developed than their challenges to the Agency Memo's suspension of the entry of FTJ derivative refugees and refugees of certain nationalities. Nonetheless, the fourth and fifth counts of the complaint are fairly read to challenge the waiver provision as unconstitutional under the Fifth Amendment's Due Process Clause. *See Doe*, Dkt. # 42 at ¶¶ 325-332; (*see also* Lin Decl. (Dkt. # 62) ¶¶ 3-5.) Moreover, among the proposed subclasses outlined in the *Doe* complaint is a "Non-immigrant Visa Class," comprising nationals of Iran, Libya, Somalia, Syria, and Yemen who are residents of Washington State, hold non-immigrant visas, lack unexpired multiple-entry visas, and cannot leave the United States for fear of being denied reentry under EO-3. *Id.* ¶¶ 300, 332. The court thus finds some degree of overlap between this action and *Doe* and rejects Defendants' argument that *Doe* should not feature in the court's analysis of the first-to-file factors.[6] (*See* Mot. at 5-7.)

The presence of *Doe* on this court's docket is not dispositive for purposes of the first-to-file rule, however. Where more than two pending actions implicate similar claims, a court deciding a motion to transfer may assess which of the actions are "more closely related" under the first-to-file analysis. *Hengle v. Curry*, No. 3:18-cv-100, 2018 WL 3016289, at *14 (E.D. Va. Jun. 15, 2018) (comparing the first-filed action with two subsequently filed cases involving similar subject matter); *see also Wenzel v. Knight*, No. 3:14cv432, 2015 WL 222179, at *5-6 (E.D. Va. Jan. 14, 2015). Here, transfer under the

---

[6] That *Doe* plaintiffs' challenges to the waiver provision are currently stayed (*see* Lin Decl. ¶ 4) has no bearing on the court's assessment of Defendants' motion. *Doe* plaintiffs may, in the future, seek to lift the stay in that case. (*See id.* ¶ 5.)

ORDER - 9

first-to-file rule would be appropriate should the court find that this action is more closely related to *Emami* than it is to *Doe*. *See Hengle*, 2018 WL 3016289, at *14. Accordingly, the court proceeds to compare the chronology, parties, and issues of this action, *Emami*, and *Doe*.

1. Chronology

The chronology-of-actions factor is straightforward. *Doe* plaintiffs filed suit in 2017 and amended their complaint to challenge both EO-3 and the Agency Memo on November 6, 2017. *Doe*, Dkt. # 42. *Emami* was filed on March 13, 2018. *Emami*, Dkt. # 1. Plaintiffs here filed suit on July 31, 2018. (Compl.) Of the three challenges to EO-3, *Doe* is the first-filed action. Viewed broadly, the chronology factor weighs against transfer. Should the court find that the parties and issues of this action are more closely related to *Emami* than to *Doe*, however, as between *Emami* and this action, *Emami* would constitute the first-filed action for purposes of the first-to-file rule.

2. Similarity of Parties

The first-to-file rule "does not require exact identity of the parties." *Kohn*, 787 F.3d at 1240. Rather, the rule may apply where a court concludes that two actions present "substantial similarity of parties." *Id.*; *see also Music Grp. Servs. US, Inc. v. inMusic Brands, Inc.*, No. C13-0183MJP, 2013 WL 1499564, at *2 (W.D. Wash. Apr. 11, 2013) ("The requirement of similar parties is satisfied if the parties are substantially similar, although nonidentical."). In the context of class actions, a court should compare the putative classes, rather than the named plaintiffs, to determine whether the classes encompass at least some of the same individuals. *Bewley*, 2017 WL 5158443, at *2; *see*

*also Hilton v. Apple, Inc.*, No. C-13-2167 EMC, 2013 WL 5487317, at *7 (N.D. Cal. Oct. 1, 2013) (collecting cases).[7]

The court begins by comparing the putative classes in this action and in *Doe*. The "Lawfully Present Foreign National Subclass" asserted here resembles the "Non-immigrant Visa Class" proposed in *Doe*. (*See* Compl. ¶ 269(c)); *Doe*, Dkt. # 42, ¶¶ 300, 332. Both subclasses encompass nationals of Iran, Libya, Somalia, Syria, and Yemen who are lawfully present in the United States, wish to travel abroad and return to the United States, and fear being subject to EO-3 and barred from reentering the country. (*See* Compl. ¶ 269(c)); *Doe*, Dkt. # 42, ¶¶ 300, 332. The scope of the subclasses differs, however. *Doe*'s "Non-immigrant Visa Class" is limited to nonimmigrants who reside in Washington State, *Doe*, Dkt. # 42, ¶ 300, whereas the subclass proposed here is national in scope (Compl. ¶ 269(c)). Finally, the other two subclasses proposed in this action— the "U.S. Petitioner Subclass" and the "Visa Applicant Subclass"—appear not to be represented in *Doe*. *See generally Doe*, Dkt. # 42.

The two subclasses absent in *Doe*, however are virtually identical to the two subclasses proposed in *Emami*. The "U.S. Petitioner Subclass" asserted here and the "Family Member Class" in *Emami* appear to encompass the same individuals: U.S.

---

[7] As various courts have observed, if the first-to-file rule were to require a strict identity of the named plaintiffs, the rule would rarely apply in class actions. *See, e.g., Hilton*, 2013 WL 5487317, at *7; *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 791 (6th Cir. 2016). "This result would be in direct conflict to the purposes of the first-to-file rule because class actions are frequently complex affairs which tax judicial resources—the very cases in which the principles of avoiding duplicative proceedings and inconsistent holdings are at their zenith." *Hilton*, 2013 WL 5487317, at *7.

citizens and lawful permanent residents with an approved petition to be reunited with a family member who is a national of Iran, Libya, Somalia, Syria, or Yemen, is subject to EO-3, and has been denied a waiver or is currently awaiting a decision on a waiver. (Compl. ¶ 269(a)); *Emami*, Dkt. # 34, ¶ 11. Similarly, the "Visa Applicant Subclass" proposed here closely tracks the "Visa Applicant Class" asserted in *Emami*. Both proposed subclasses include Iranian, Libyan, Somali, Syrian, and Yemeni nationals who have applied for immigrant or nonimmigrant visas, are subject to EO-3, and have been denied a waiver or are currently awaiting a decision on a waiver. (Compl. ¶ 269(c)); *Emami*, Dkt. # 34, ¶ 12. From the face of the complaints, and for purposes of the first-to-file rule, the court can discern no meaningful differences in the parameters of either set of subclasses.[8] Plaintiffs do not argue otherwise. (*See generally* Resp.)

The court acknowledges that the "Lawfully Present Foreign National Subclass," as well as Pars Equality and OneAmerica, are not represented in *Emami*. The absence in an earlier-filed action of a subclass proposed in a later-filed action is not dispositive for purposes of the first-to-file analysis, however. *See, e.g., Herrera v. Wells Fargo Bank, N.A.*, No. C 11-1485 SBA, 2011 WL 6141087, at *2 (N.D. Cal. Dec. 9, 2011) (finding that "the absence of California subclass from the [first-filed] action is not determinative,

---

[8] As Defendants point out, the "Family Member Class" proposed in *Emami* is in fact slightly broader than the "U.S. Petitioner Subclass" proposed in this action. (Mot. at 10 n.3.) The former includes not only United States citizens and lawful permanent residents who have approved family-based immigration petitions, but also United States citizens and lawful permanent residents who have noncitizen relatives abroad who wish to seek nonimmigrant visas to enter the United States and are subject to EO-3. (*See id.*); *see also Emami*, Dkt. # 34, ¶ 11. Defendants correctly note that "while the two [subclasses] are not exactly coterminous, all members of the 'U.S. Petitioner Subclass' in [this action] fall within the 'Family Member Class' in *Emami*." (Mot. at 10 n.3.)

particularly given that both actions involve the same defendant"). Nor is the absence in *Emami* of the organizational Plaintiffs a determinative consideration, given the significant overlap between the two above-mentioned subclasses. *See Intersearch WorldWide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959 n.6 (N.D. Cal. 2008) ("The [first-to-file] rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters.").

In light of the substantial symmetry between this action's "U.S. Petitioner Subclass" and "Visa Applicant Subclass," on the one hand, and *Emami*'s "Family Member Class" and "Visa Applicant Class," on the other, the court finds that Plaintiffs are more closely related to the plaintiffs in *Emami* than to those in *Doe*. Two of the three proposed subclasses in this case sweep in virtually the same individuals as the two proposed subclasses in *Emami*. In contrast, this action shares with *Doe* just one putative subclass, which although national in scope here, is limited in *Doe* to residents of Washington. The court further observes that each of the Defendants in this action is also a defendant in *Emami*. (*See* Compl. at 1); *Emami*, Dkt. # 34 at 1. Plaintiffs thus do not seek relief against any individual or agency not already implicated in *Emami*. For these reasons, the court concludes that the parties in this case and *Emami* are substantially similar for purposes of the first-to-file rule. The similarity-of-parties factor weighs in favor of transfer.

//

//

### 3. Similarity of Issues

"The first-to-file rule is satisfied by a sufficient similarity of issues." *Intersearch Worldwide*, 544 F. Supp. 2d at 959 (emphasis omitted). District courts in this circuit have held that the issues presented in the actions must be "substantially similar," rather than identical, to warrant transfer. *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010) (quoting *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006)); *see also Hill v. Robert's Am. Gourmet Food, LLC*, No. 13-cv-00696-YGR, 2013 WL 3476801, at *4 (N.D. Cal. Jul. 10, 2013).

Plaintiffs allege that the wavier provision violates the Fifth Amendment's Due Process Clause and the APA. (Compl. ¶¶ 278-306.) *Doe* also contests the constitutionality of the waiver provision on Due Process grounds. *See Doe*, Dkt. # 42, ¶¶ 325-332. Yet Plaintiffs' claims and the allegations underlying those claims share more common ground with the Due Process and APA claims asserted in *Emami*. With respect to the Due Process claims, Plaintiffs here and plaintiffs in *Emami* allege that the government has deprived U.S. citizens and lawful permanent residents of their constitutionally protected interest in family reunification and certain statutory and regulatory rights to petition for visas for their family members, without due process of law. (Compl. ¶¶ 295-306); *Emami*, Dkt. # 34, ¶¶ 322-334. With respect to the APA claims, Plaintiffs here and plaintiffs in *Emami* allege, among other things, that they have been denied waivers without ever having received notice of the waiver process or an opportunity to demonstrate their eligibility for a waiver. (*See, e.g., Compl.* ¶¶ 281-285); *Emami*, Dkt. # 34, ¶¶ 11-12, 319-320. Notably, Plaintiffs do not argue that their claims

differ in any meaningful fashion from those asserted in *Emami*. (*See generally* Resp.) The court finds that the issues presented in this action and in *Emami* are substantially similar. The similarity-of-issues factor thus weighs in favor of transfer.

In sum, the court concludes that transfer of this action is warranted under the first-to-file rule. In light of the congruence of two of the three proposed subclasses in this action and in *Emami*, as well as the overlapping nature of the class members' claims, transfer will obviate the risk that class members may face inconsistent rulings. Transfer will also promote the principles of efficiency and comity that animate the first-to-file rule. To allow two parallel class actions to proceed in separate districts would be duplicative and inefficient. *See, e.g., Henry v. Home Depot U.S.A., Inc.*, No. 14-cv-04858-JST, 2016 WL 4538365, at *4 (N.D. Cal. Aug. 31, 2016) (noting that in the context of transfer under the first-to-file rule, "[t]he potential efficiency gains are particularity heightened where . . . the class actions involve overlapping claims and class periods").

## C. Convenience Factors

Plaintiffs argue that in assessing the first-to-file factors, the court may, in its discretion, analyze the balance of convenience pursuant to 28 U.S.C. § 1404(a). (Resp. at 4, 6-7.) Plaintiffs further argue that Plaintiffs' ties to the Western District of Washington weigh decisively against transfer. (*Id.*) To that end, Plaintiffs furnish the declarations of four individual Plaintiffs, which illustrate their ties to this district and investment in these proceedings. (*See* Whitehall Raghebi Decl. (Dkt. # 57); Raghebi Decl. (Dkt. # 58); Siraji Decl. (Dkt. # 59); Hassan Decl. (Dkt. # 60).) Defendants, in contrast, assert that because

the first-to-file rule and 28 U.S.C. § 1404(a) afford separate bases for transfer, the court need not reach the convenience factors Plaintiffs emphasize. (Reply at 4-5.)

District courts in the Ninth Circuit have expressly distinguished the first-to-file rule from 28 U.S.C. § 1404(a), which permits transfer for the convenience of parties and witnesses. *See, e.g., TGN, Inc. v. CRS, LLC*, No. C08-0680MJP, 2008 WL 11343671, at *2 (W.D. Wash. Aug. 5, 2008). "As other district courts have pointed out, a motion to transfer pursuant to the first-to-file rule does not depend on the presence or absence of the § 1404(a) considerations." *Priddy v. Lane Bryant, Inc.*, No. 08-06889 MMM (CWx), 2008 WL 11410109, at *9, n.52 (C.D. Cal. Nov. 24, 2008) (citation and quotation marks omitted). On occasion, a court assessing the first-to-file factors may consider the extent to which the convenience of parties and witnesses weighs against transfer. *Pacesetter*, 678 F.2d at 96. However, "[t]he Ninth Circuit has cautioned that relaxing the first-to-file rule on the basis of convenience is a determination best left to the court in the first-filed action." *Wallerstein*, 967 F. Supp. 2d at 1293 (citing *Ward v. Follet Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994)); *see also Pacesetter*, 678 F.2d at 96 (stating that "normally the forum non conveniens argument should be addressed to the court in the first-filed action"). Accordingly, a court deciding a motion to transfer a later-filed action pursuant to the first-to-file rule typically should decline to assess the convenience factors of § 1404(a). *See, e.g., Bewley*, 2017 WL 5158443, at *3 n.5 ("Because the Court finds that transfer is warranted under the first-to-file rule, the Court does not address whether transfer would be appropriate pursuant to § 1404(a)."); *Wallerstein*, 967 F. Supp. 2d at

//

ORDER - 16

1298 ("As this matter is transferred pursuant to the first-to-file rule, the Court will not address transfer under Section 1404(a) . . . .").

Here, because Defendants move to transfer pursuant to the first-to-file rule, not 28 U.S.C. § 1404(a), and because this case is not the first-filed action, the court declines Plaintiffs' invitation to assess the balance of convenience under § 1404(a). Nonetheless, the court observes that, in general, Plaintiffs' ties to this district are not as overwhelming as Plaintiffs' counsel suggest. Plaintiffs state that a "plurality" of Plaintiffs—four individuals and OneAmerica—reside in the Western District of Washington. (Resp. at 9.) Yet Plaintiffs also concede that three named Plaintiffs, as well as Pars Equality, have "ties . . . to the Northern District of California." (*Id.*) The court does not seek to minimize the connections to this district of four individual Plaintiffs, as well as their sincere investment in these proceedings. (*See* Whitehall Raghebi Decl.; Raghebi Decl.; Siraji Decl.; Hassan Decl.) But as set forth in the record before the court, the balance of convenience hardly appears to weigh so heavily against transfer as to justify a departure from the first-to-file rule. *See, e.g., Am. Newland Communities, L.P. v. Axis Specialty Ins. Co.*, No. 11CV1217 JLS (WMC), 2011 WL 5359335, at *4 (S.D. Cal. Nov. 7, 2011) ("Because consideration of the respective convenience of the two courts is typically addressed to the court in the first-filed action, . . . and because the Court finds that the balance of convenience is neutral or at most only slightly more favorable to the California

//

//

//

forum, it declines to exercise its discretion to depart from the first-to-file rule here.").

Transfer is thus warranted under the first-to-file rule.[9]

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion to transfer this action to the Northern District of California (Dkt. # 55). The court DIRECTS the clerk to strike from the court's calendar Defendants' pending motion to dismiss (Dkt. # 64), Plaintiffs' pending motion to compel (Dkt. # 65), and Defendants pending motion for

//

//

---

[9] The Ninth Circuit recently held that the first-to-file rule does not negate the statutory requirement that an action may be transferred only to a district where it "might have been brought." *In re Bozic*, 888 F.3d 1048, 1054 (9th Cir. 2018) (quoting 28 U.S.C. §1404(a)). This is so because "[a]lthough the first-to-file rule guides the district court's exercise of discretion in handling related cases, the requirements of § 1404(a) cabin the exercise of that discretion." *Bozic*, 888 F.3d at 1054. The court understands *Bozic* to concern only § 1404(a)'s final clause, which restricts transfer to those districts in which the action "might have been brought," and not to require that a district court applying the first-to-file rule assess the convenience of the parties and "the interest of justice." 28 U.S.C. § 1404(a). At least one other district court in this circuit has adopted the same reading of *Bozic*. *Kutob v. L.A. Ins. Agency Franchising*, No. 2:18-cv-01505-APG-PAL, 2018 WL 4286171, at *3 (D. Nev. Sept. 7, 2018).
Here, the Ninth Circuit's ruling in *Bozic* is satisfied because Plaintiffs could have brought this action in the Northern District of California. Subject matter jurisdiction exists because Plaintiffs bring claims arising under the Constitution and federal statutes. *See* 28 U.S.C. § 1331. Defendants, federal officials and agencies, do not dispute that they are subject to personal jurisdiction in the Northern District of California. (*See generally* Mot.; Reply.) Finally, venue is proper in the Northern District of California under 28 U.S.C. § 1391(e), because at least one of the original named Plaintiffs resides in that district. (*See* Compl. ¶ 16 (noting that "Plaintiff Pars Equality Center is . . . headquartered in Menlo Park, California"); *id.* ¶ 31 (noting that "Plaintiff Malayeen Ahmed . . . lives in Santa Clara, California); *id.* ¶ 35 (noting that "Plaintiff Nicolas Hanout . . . liv[es] in Castro Valley, California"); *id.* ¶ 41 (noting that Plaintiff John Doe # 3 . . . lives in San Francisco, California")); *see also F.L.B. v. Lynch*, 180 F. Supp. 3d 811, 815 (W.D. Wash. 2016) (holding that in a putative class action against the United States Attorney General and other officials, venue was proper under § 1391(e) "because at least one of the original plaintiffs resided in the district" where the action was filed).

reconsideration of the court's order granting Plaintiffs' motion to proceed under pseudonym (Dkt. # 70), and to close this file.

Dated this 11th day of December, 2018.

JAMES L. ROBART
United States District Judge